IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TRAVIS MOLLOHAN and**
**CRYSTAL MOLLOHAN,**

       **Plaintiffs,**

v.                                                         Case No.: 3:20-cv-00706

**HOWARD GREGORY, an individual,**
**T.V.B., a West Virginia Corporation,**
**FEDERAL DEPOSIT INSURANCE COMPANY (FDIC),**
**as receiver for The First State Bank,**
**a Banking Institution,**

       **Defendants.**

**STATE AUTO PROPERTY AND CASUALTY**
**INSURANCE COMPANY,**

       **Intervenor Plaintiff,**

v.

**TRAVIS MOLLOHAN,**
**CRYSTAL MOLLOHAN,**
**HOWARD GREGORY, an individual,**
**T.V.B. Inc., a West Virginia Corporation, and**
**THE FIRST STATE BANK,**

       **Intervenor Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending is the Renewed Motion of Probuild Company, LLC, to Intervene. (ECF No. 4). For the following reasons, the Court **DENIES** the Motion.

**I.**     **Relevant Background**

In May 2017, Plaintiffs Travis and Crystal Mollohan obtained a loan of $407,500 from First State Bank to purchase real property in Putnam County, West Virginia and to

construct a home on the land. The loan was secured with a Credit Line Deed of Trust. The Mollohans contracted with Howard Gregory and his company, T.V.B., Inc., to build the house. Construction began, but was never completed, because Gregory and T.V.B. developed financial problems. In February 2018, after learning that their house was not progressing as expected, the Mollohans filed suit against First State Bank, Gregory, and T.V.B. in the Circuit Court of Putnam County, asserting claims of breach of contract, breach of fiduciary duty, fraud, negligence, conversion, intentional infliction of emotional distress, and violations of the West Virginia Consumer Credit Protection Act. A few months after the suit was filed, Gregory filed for bankruptcy.

In the meantime, Probuild, a supplier of building products, had delivered materials to T.V.B. for use in the Mollohan's house and was awaiting payment. When payment was not forthcoming, Probuild recorded a materialman's lien against the Mollohan property on January 3, 2018. Probuild subsequently lodged a claim against Gregory's estate in the bankruptcy proceeding, and on June 8, 2018, filed a collection suit in the Circuit Court of Putnam County against the Mollohans, Gregory, and T.V.B. Probuild also moved to intervene in the pending Putnam County action filed by the Mollohans. That motion was never ruled upon, however, because of the automatic stay associated with Gregory's bankruptcy.

On September 23, 2019, First State Bank filed a complaint against Travis Mollohan in the Circuit Court of Putnam County. According to the complaint, the Mollohans had defaulted on their loan, resulting in foreclosure. On May 8, 2019, First State Bank purchased the Mollohans' property for $250,000 at a Trustee's Sale, leaving a deficiency on the loan of $77,427, which First State Bank hoped to collect in the lawsuit.

On April 3, 2020, First State Bank failed, and the FDIC was appointed as receiver. Thereafter, the FDIC sold certain assets of First State Bank to MVB Bank, including the property that had previously belonged to the Mollohans. On October 23, 2020, the FDIC removed the Putnam County actions filed by the Mollohans and First State Bank to this Court pursuant to 12 U.S.C. § 1819(b)(2). The collection lawsuit filed by Probuild was not removed and remained pending in the Circuit Court of Putnam County.

On November 18, 2020, Probuild filed a Renewed Motion to Intervene in the action filed by the Mollohans. The Court conducted a status conference on March 16, 2021 and consolidated the Mollohans' case and the case filed against the Mollohans by First State Bank. (ECF Nos. 19, 20). The parties were given additional time to file briefs in response to Probuild's Motion to Intervene. (ECF No. 20). On Friday, April 16, 2021, the Court conducted a second status conference at which the Motion to Intervene was denied. The parties were then given two weeks to provide the Court with a draft dismissal order pertaining to the remaining claims in the consolidated cases.

## II. **Standard of Review**

Motions to intervene are liberally permitted "to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock,* 802 F.2d 722, 729 (4th Cir. 1986) (citing *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C. Cir. 1967)). "Liberality does not, however, entail resolving every possible doubt in favor of intervention, and Federal Rule of Civil Procedure 24 sets standards for intervention that must be observed and applied thoughtfully." *Ohio Valley Env't Coal, Inc. v, McCarthy,* 313 F.R.D. 10, 16 (S.D.W. Va 2015). Under Rule 24, intervention can be granted by right or permissively. An intervention of right is appropriate when the intervenor "is given an unconditional right to intervene by federal

statute," or when the prospective intervenor can satisfy a four-pronged standard. Fed. R. Civ. P. 24(a); *also Alt v. EPA,* 758 F.3d 588, 591 (4th Cir. 2014) (stating that, in addition to the three prongs contained in Rule 24(a)(2), the motion to intervene must be timely filed). The four prongs necessary to meet the standard include the following: (1) the motion must be timely; (2) the intervenor must claim an interest relating to the property or transaction that is the subject of the action; (3) the intervenor must be "so situated that disposing of the action may as a practical matter impair or impede" the intervenor's ability to protect its interest; and (4) there is no other party in the action that can adequately protect the interests of the intervenor. Fed. R. Civ. P. 24(a)(2). If the prospective intervenor cannot meet all four prongs of the standard, the court may still allow a permissive intervention if the prospective intervenor has a conditional right to intervene by federal statue, or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

### III.   Discussion

Probuild does not claim that a federal statute provides it with either an unconditional or a conditional right to intervene. Therefore, the Court will consider whether Probuild's motion to intervene should be granted under Fed. R. Civ. P. 24(a)(2) or 24(b)(2).

Starting with the four-pronged standard used to assess a motion to intervene of right, the Court finds that Probuild meets the first prong, because its motion was timely filed. The motion to intervene was filed before much activity had taken place in the Putnam County action, and although Probuild's motion was never decided, that delay cannot be attributed to Probuild. To meet the second prong, Probuild must demonstrate that it has a "significantly protectible interest" in the Mollohans' litigation. A significantly

4

protectable interest is shown, for example, when the prospective intervenor "stand[s] to gain or lose by the direct legal operation of a judgment in that action." *Ohio Valley Env't Coal., Inc.,* 313 F.R.D. at 18 (quoting *Teague v. Bakker,* 931 F.2d. 259, 261 (4th Cir. 1991)). Similarly, if the prospective intervenor would qualify as an indispensable party under Fed. R. Civ. P. 19(a)(1), then the intervenor's interest would be significantly protectible. *Id. (*stating that the Advisory Committee Notes to Rule 24 suggest "that an applicant [to intervene] should be permitted intervention as of right under 24(a)(2) only in those situations when the applicant would be a necessary party under today's Rule 19(a)(1)(B)(i)").

According to Probuild, it has a substantial and direct interest in the Mollohans' litigation, because the Mollohans complain that Defendant T.V.B. failed to pay its suppliers, including Probuild, resulting in a lien on the property. (ECF No. 5 at 6). Probuild further asserts that it must intervene in the case to protect its lien interest in the Mollohans' property. The Court disagrees.

The instant action was filed by the Mollohans to address the defendants' alleged breach of contract, violations of consumer protection laws, breach of fiduciary duty, conversion, and fraud. None of these claims rests on Probuild's unpaid invoices or seeks payment of the invoices. The subject matter of the lawsuit is not the property previously owned by the Mollohans, but rather the financial loss suffered by the Mollohans after they made a down payment and took out a sizeable loan for the construction of a house that was never finished. The Mollohans did not contract with Probuild to supply materials to the construction site. Moreover, they were never able to take possession of a completed home and no longer have any interest in the property at issue. Therefore, the Mollohans' suit seeking damages for their losses has no effect on Probuild's claims. Probuild simply

is not a necessary party to the pending action. Therefore, Probuild does not have a significant protectible interest in the subject matter of the Mollohans' lawsuit to justify intervention of right. Similarly, the crossclaims and counterclaims asserted in the Mollohan litigation have nothing to do with the materials provided by Probuild. Instead, they largely revolve around the loan deficiency that is the subject of First State Bank's action against the Mollohans. Of note, MVB Bank, the current owner of the property to which Probuild's lien attached, is not a party to the instant action.

In addition to Probuild's failure to satisfy the second prong of the standard, Probuild cannot demonstrate fulfillment of the third prong. As explained in *Ohio Valley Env't Coal., Inc.*:

> The question presented by 24(a)(2)'s impairment prong requires a practical analysis. The impairment prong is satisfied where (1) disposition of the action would put the [prospective intervenor] at a practical disadvantage in protecting its interest, or (2) the stare decisis effect of a judgment would legally preclude the would-be intervenor from protecting its interests later. The practical disadvantage of filing a separate suit and perhaps duplicating efforts is not sufficient to satisfy the impairment prong.

*Id.,* at 26 (citations and markings omitted). Probuild argues that it must intervene in this action to protect its lien, but provides no analysis to support that statement. Since the instant action has nothing to do with the property or Probuild's lien, the Court struggles to follow Probuild's logic. A resolution of the claims in this case simply would not impair Probuild's efforts to collect reimbursement based on its contract with T.V.B. Indeed, Probuild essentially acknowledged the independence of its claim from the Mollohans claims when it filed a collection suit in Putnam County Circuit Court and submitted a claim in the Gregory bankruptcy proceeding. Consequently, as Probuild does not meet all four prongs of the standard for intervention of right, the Court will next examine permissive intervention.

Probuild's contention that it is entitled to permissive intervention, if not intervention of right, is equally unavailing. To qualify for permissive intervention, Probuild must share a common question of law or fact in the main action. If Probuild fails to identify a claim or defense that shares a common question of law or fact, permissive intervention should be denied. *Ohio Valley Env't Coal., Inc.,* 313 F.R.D. at 30. If common questions of law or fact exist, then the Court has discretion to allow Probuild to intervene. *Id.* In exercising this discretion, the Court asks "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). To answer the question, the Court "must balance the delay threatened by intervention against the advantages promised by it." *Ohio Valley Env't Coal., Inc.,* 313 F.R.D. at 30 (citation omitted).

In the present action, the Mollohans complain about breaches by the defendants that led to the Mollohans suffering losses. While the losses occurred, in part, due to the financial difficulties suffered by Gregory and T.V.B., the facts and law underlying the Mollohans' claims are complex and multi-layered, while Probuild has nothing more than a straight-forward collection claim against T.V.B. and, perhaps, the Mollohans. More importantly, allowing Probuild to intervene in the case at a point in the litigation where all the other claims are to be dismissed as agreed and compromised would create undue delay, impede the settlement, and cause the parties to incur additional, unnecessary legal fees.

Probuild contends that it has two claims that could be addressed in this case; one being unjust enrichment against the Mollohans, and the other being the collection matter against T.V.B. However, Probuild cannot expect to have much success with its claim against T.V.B., as it reportedly has no assets and has been dissolved. Similarly, Probuild's

claim against the Mollohans is likely to be unsuccessful, as the Mollohans never occupied the property and no longer have any interest in it. Indeed, the Mollohans were left in the same position as Probuild vis-à-vis the Gregory/T.V.B. financial collapse. Balancing the prospective advantages of allowing Probuild to intervene against the delay caused by intervention, the Court concludes that intervention will not further the goal of efficiency. Additionally, a denial of the motion to intervene will not impair Probuild's ability to pursue its claim in other forums. Therefore, the Court denies Probuild's Motion to Intervene.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

**ENTERED:** April 22, 2021

_____
Cheryl A. Eifert
United States Magistrate Judge